# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES E.R. MCDONALD     :     CIVIL ACTION NO. 3:02CV2137 (MRK)

        Plaintiff         :

V.         :

PHILIP E. AUSTIN, ROSS D. MACKINNON :  NOVEMBER 12, 2004
WILLIAM C. STWALLEY     :

        Defendants     :

## AFFIDAVIT

STATE OF CONNECTICUT    )
                     )  ss. Hartford      November 12, 2004
COUNTY OF HARTFORD     )

    I, Robert M. Barrack, being duly sworn, hereby depose and say as follows:

1.    I am over the age of 18 years and believe in the obligations of an oath.

2.    I am a partner in the law firm of Halloran & Sage LLP in Hartford, Connecticut.

3.    The plaintiff is a former graduate student in physics at the University of Connecticut (the "University"). At all times relevant hereto, Professor Moshe Gai was the plaintiff's faculty advisor in the Physics Department at the College of Arts and Sciences at the University. The Head of the Physics Department was at all times relative hereto the defendant Professor William C. Stwalley. Beginning in the late 1990s, Professor Gai became embroiled in a series of disputes with various colleagues,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

06314 0005
HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

Physics Department staff and students, and a number of charges of serious misconduct were brought against Professor Gai by parties within this community. These circumstances led to the University initiating disciplinary action against Professor Gai, and ultimately in 2001, the Dean of the College of Arts and Sciences, defendant Ross D. MacKinnon, recommended that Professor Gai be terminated. As a result of the disciplinary proceedings brought by the University against Professor Gai, Professor Gai was placed on administrative leave from the University by Dean MacKinnon. Pursuant to the terms of the leave, Professor Gai was prohibited from the University's main campus in Storrs, Connecticut.

4.    Professor Gai, who was ultimately represented by Attorney John Williams in connection with the disciplinary proceedings and other matters, initiated at least nine administrative and judicial actions against the University and/or Professor Stwalley, Dean MacKinnon, President Philip E. Austin, and other professors who had made complaints against Professor Gai. [1] Upon information and belief, all of these actions

---

[1]  On May 21, 2001, Gai filed a complaint with the Connecticut Commission on Human Rights and Opportunities claiming that he was being discriminated against on the basis of his national origin and whistleblower activities. This complaint was dismissed as being without merit. (CHRO No. 0140413). On January 7, 2002, Gai filed an action with the District Court, District of Connecticut, alleging violations of his constitutional rights resulting from the University's disciplinary processes against him. (Gai v. Philip E. Austin, John D. Peterson, and Ross MacKinnon, No. 3:02CV00025(AVC)) On February 6, 2002, Gai filed a complaint against the University directly before OSHA, alleging violations of 42 U.S.C. § 5851, the so-called "Nuclear Whistleblower" provision of Energy Reorganization Act, 42 U.S.C. § 5801, et seq (Case No. 1-0280-02-011). This action was dismissed as being without merit, and Gai appealed. On July 31, 2002, Gai filed a complaint with the Nuclear Regulatory Commission, also claiming that he was discriminated against by the University as a "whistleblower." This case was dismissed as being without merit. (Case No. 1-2002-005). On December 26, 2002, Gai commenced a civil action in state court entitled Moshe Gai v. William Stwalley, et

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

were part of a concerted effort by Professor Gai to pressure the University into settling

with him and ending the termination proceedings against him.  As a part of this effort,

two of Professor Gai's (now former) graduate students, James E.R. McDonald and

Joseph A. Dooley, also filed actions against the same University officials who were

named in the Gai matters, essentially claiming that they were being discriminated

against because of their affiliation with Professor Gai, and that their academic careers

were harmed because of the disciplinary proceedings and resulting administrative leave

imposed against Professor Gai.[2]  Attorney John Williams filed both actions on behalf of

McDonald and Dooley.

     5.    From at least the beginning of 2002, the University and Professor Gai,

through counsel, attempted to settle their disputes, which included a protracted

---

al, which appears to allege defamation against three University professors who complained
about Gai's inappropriate behavior and informed the University of his behavior.  Gai also
filed numerous complaints with various state agencies alleging improper use of grant funds
and other alleged violations by the University.  On February 14, 2003, Gai filed in state court
a breach of contract action, entitled <u>Gai v. Philip E. Austin, et al</u>, against the same University
officials named in his first federal action, alleging breaches of a collective bargaining agree-
ment and a mediation agreement.  That action was dismissed for lack of subject matter
jurisdiction on or about July 25, 2003, and Gai appealed.  Two additional University
professors were served with another state court lawsuit: <u>Gai v. William Stwalley and Gary
Bent</u>, dated April 4, 2003.  Additionally, Gai filed another state court action against the
University, <u>Gai v. University of Connecticut</u>, on April 11, 2003 alleging breach of contract by
the University in connection with a Department of Energy grant.  After the University filed a
Motion to Dismiss, Gai withdrew that action on July 23, 2003.  Then on August 13, 003, Gai
filed another action in this Court against Dean MacKinnon, entitled <u>Gai v. MacKinnon</u>, No.
3:03CV01256 (RNC), alleging constitutional violations because he was prohibited from
utilizing certain grant funds during his academic leave.  All pending matters were voluntarily
dismissed or withdrawn following a global settlement between the parties in the spring of
2004.

[2]/   The present action was commenced on December 2, 2002.  Joseph Dooley's action against
    Professor Stwalley, No. 3:03CV01435 (JCH), was filed on August 26, 2003.

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

mediation effort during 2002. These efforts became more complex and difficult as

additional actions were filed by Professor Gai. Nevertheless, it was recognized by the

parties and counsel that any settlement of the McDonald and Dooley cases could only

reasonably be negotiated if a global settlement of the Gai matters were achieved. At

least in the view of the University, the McDonald and Dooley matters were peripheral to

the primary disputes with Professor Gai. With regard to the McDonald matter, the

defendants were initially represented solely by Assistant Attorney General ("AAG") Paul

McCarthy, who filed the original Answer and Affirmative Defense on behalf of the

defendants on December 30, 2002, shortly after the action was filed, and before a

factual record was developed. The Answer denied the substantive allegations of the

Complaint and asserted in the one affirmative defense that "the Complaint fails to state

a claim upon which relief may be granted." The intent was to move to file an Amended

Answer and Affirmative Defenses after discovery was completed.

6.    Subsequently, the University retained outside counsel from the law firm of

Halloran & Sage LLP, including Attorneys James Sconzo, Kristi Mackin, and Robert

Barrack, who were already representing the University in connection with the Gai

matters. At this time, as explained above, settlement efforts were underway with regard

to the Gai matters. As a result of the considerable settlement efforts directed to Gai

matters, the parties and counsel essentially took no action in the McDonald and Dooley

actions. Again, it was understood that these matters could not be settled unless and

until the Gai matters were settled.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

7.    Settlement negotiations between Professor Gai and the University progressed and intensified through the fall of 2003 and the winter of 2004, which finally culminated into a global settlement between the University and its officials and Professor Gai in the spring of 2004.  Also during the spring of 2004, the parties began discussing the potential settlement of the McDonald and Dooley matters.  In accordance with this effort, on March 18, 2004, this Court issued an Order referring the case to Special Masters S. Robert Jelley and David N. Rosen.  On April 1, 2004, this Court issued an Amended Order of Referral to Special Masters, substituting William Bloss for Mr. Rosen as one of the Special Masters.  Pursuant to the Amended Order, the parties and counsel engaged in a settlement conference before the Special Masters on May 27, 2004.  Although the parties were unable to reach a settlement, the Special Masters recognized that the Dooley matter was so closely related to the present matter that any further conferences or negotiations should include both matters in an attempt to achieve a global settlement.

8.    In the meantime, on March 4, 2004, the defendants in this matter served the plaintiff with their Interrogatories and Requests for Production.  On April 23, 2004, the defendants noticed the plaintiff's deposition for May 13, 2004.  Because the plaintiff had requested and obtained an extension of time to respond to the defendants' discovery requests until June 2, 2004, the defendants were obliged on May 26, 2004 to re-notice McDonald's deposition for June 16, 2004.  The plaintiff served his responses to the defendants' discovery requests on the defendants on or about May 27, 2004.

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

However, Attorney Williams subsequently notified defendants' counsel that his client would be unable to attend the scheduled deposition on June 16, 2004, and therefore, after negotiations with plaintiffs' counsel, on August 5, 2004, the plaintiff's deposition was re-noticed for September 22, 2004.  Subsequently, plaintiff's counsel notified defendants' counsel that the plaintiff would be unable to attend the scheduled deposition on September 22, 2004, and on September 21, 2004, defendants' counsel re-noticed  the plaintiff's deposition for October 5, 2004.  Plaintiff's counsel then notified defendants' counsel that they would be unable to attend the plaintiff's scheduled deposition on October 5, 2004, and on October 1, 2004, defendants' counsel re-noticed the plaintiff's deposition for October 11, 2004.  Finally, on October 11, 2004, the plaintiff attended his deposition at the law offices of Halloran & Sage LLP in Hartford, Connecticut.

9.     Plaintiff's counsel received the transcript of McDonald's deposition on November 1, 2004.  Defendants' counsel intended to seek leave to file an Amended Complaint in order to supplement the affirmative defense originally filed by AAG McCarthy, but believed that the most efficient time to do this was upon the completion of discovery, because additional facts in support of such defenses might be learned. Defendants' counsel wished to avoid seeking leave to file and Amended Answer and Affirmative Defenses more than once.  However, defendants' counsel did not anticipate the continual delays and continuances of the plaintiff's deposition required by the plaintiff and his counsel.  Thus, on November 5, 2004, immediately after receiving and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

reviewing the deposition transcripts, defendants' counsel filed the defendants' Motion

for Leave to File Amended Answer and Affirmative Defenses.  The defendants seek

leave to add seven additional affirmative defenses, the most substantive of which raise

legal immunities claimed by the defendant.s  The defendants wish to rely upon these

defenses in connection with a planned Motion for Summary Judgment to be filed by

December 15, 2004.

　　　　10.　　The plaintiff has never attempted to conduct any discovery whatsoever in

this matter.

_Robert M. Barrack_
Robert M. Barrack


Subscribed and sworn to before me this 12th day of November 2004.

Commissioner of the Superior Court
PETER E. STRNISTE, JR.

616486_1 DOC

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No  26105

# EXHIBIT  B

Westlaw.

Not Reported in F.Supp.2d
2004 WL 813023 (D.Conn.)
**(Cite as: 2004 WL 813023 (D.Conn.))**

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

TRILEGIANT CORPORATION, Plaintiff,
v.
BP PRODUCTS NORTH AMERICA, INC.,
Defendant.

**No. 3:02CV2237 (MRK).**

April 6, 2004.

Mena J. Bonazzoli, Robert P. Dolian, Cummings &
Lockwood, Stamford, CT, for Plaintiff.

Brian D. Porch, Jr., Day, Berry & Howard,
Stamford, CT, Steven M. Greenspan, Day, Berry &
Howard, Hartford, CT, for Defendant.

*RULING AND ORDER*

KRAVITZ, J.

*1 Currently pending before the Court are
Defendant's Motion for Permission to Amend
Answer to Add Counterclaims [doc. # 33] and
Plaintiff's Objection to Defendant's Request to
Amend [doc. # 37]. Having considered the briefs of
the parties [FN1] and having discussed the motion
to amend with the parties during a telephonic
conference on April 1, 2004, the Court DENIES
Defendant's Motion for Permission to Amend
Answer to Add Counterclaims [doc. # 33].

> FN1. *See* Def.'s Mem. of Law in Supp. of
> Its Mot. for Permission to Amend Answer
> to Add Counterclaims [doc. # 34]; Pl.'s
> Mem. of Law in Supp. of Its Obj. to Def's
> Request to Amend [doc. # 38]; Reply
> Mem. of Law In Supp. of Def's Request to
> Amend [doc. # 39].

This case was originally filed in state court in
November 2002, and Defendant removed it to
federal court in December 2002 [doc. # 1]. Plaintiff
and Defendant had a business and contractual
relationship from approximately 1992 to 2001,
when Defendant terminated the parties' contract.
Plaintiff seeks recovery for breach of contract and
CUTPA violations arising from Defendant's alleged
failure to pay certain sums that Plaintiff claims
Defendant was required to pay Plaintiff following
termination of the parties' agreement. Defendant
filed its Answer [doc. # 9] in January 2003 and did
not assert any counterclaim against Plaintiff. In
March 2003, the Court entered a Scheduling Order
[doc. # 6] that required the parties to complete
discovery by November 1, 2003 and to file any
dispositive motions by December 1, 2003. On two
occasions thereafter, the parties jointly requested
amendments to the schedule [doc. 22, 26], both of
which were granted by the Court [doc. 23, 28] so
that currently the Scheduling Order in this case calls
for completion of discovery by March 15, 2004 and
the filing of dispositive motions by April 15, 2004.
At the conference on April 1, 2004, the parties
reported that, subject to the Court's disposition of
the motion to amend, discovery was now finished.
Defendant expects to file a dispositive motion on
April 15, 2004, which, if granted, would dispose of
this case; if that motion is denied, however, this
case (which has not been claimed to a jury) is
prepared to proceed promptly to trial before the
Court.

On February 2, 2004--approximately one month
before the extended date for close of
discovery--Defendant filed a Motion for Permission
to Amend Answer to Add Counterclaims [doc. #
33]. In that motion, Defendant sought to add
counterclaims against Plaintiff for breach of
contract and restitution for amounts Plaintiff
allegedly overcharged Defendant "throughout the
course of the parties' relationship." Plaintiff
opposed the amendment.

Generally, courts should freely grant permission to
amend. *See Foman v. Davis*, 371 U.S. 178, 182, 83

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 813023 (D.Conn.)
(Cite as: 2004 WL 813023 (D.Conn.))

Page 2

S.Ct. 227, 9 L.Ed.2d 222 (1962); Fed.R.Civ.P. 15(a) . However, if the Court finds that the movant has engaged in "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, [or if amendment would cause] undue prejudice to the opposing party ..." the Court has discretion to deny leave to amend. *Rachman Bag Co. v. Liberty Mut. Co., Inc.,* 46 F.3d 230, 234 (2d Cir.1995) (quoting *Foman,* 371 U.S. at 182); *see Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) ("The court plainly has discretion [ ] to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the [opponent].")." In this case, the Court concludes that Defendant has unreasonably delayed in asserting its counterclaim, that Plaintiff would be unfairly prejudiced by allowing the amendment at this late date, and that Defendant will not be unreasonably prejudiced by denying the motion to amend.

*2 Defendant argues that it only recently discovered that it had claims against Plaintiff and that it asserted the counterclaims promptly upon discovering them. Therefore, Defendant argues, it has not unreasonably delayed in asserting its claims. The Court disagrees. The Court does not doubt that Defendant's counsel only recently discovered that Defendant had contractual claims that it could assert against Plaintiff. But the date on which Defendant's counsel realized that his client had claims against Plaintiff is not determinative. Rather, the question is whether through the exercise of reasonable diligence, Defendant could have discovered and asserted its claims earlier in this litigation. The answer to that question is clear: Defendant has had the information it needed to determine whether it had contractual claims against Plaintiff for years (if not a decade).

In its proposed counterclaims, Defendant asserts that Plaintiff overcharged Defendant under the terms of the parties' agreement "for nearly the entire life of the program." Def.'s Mem. in Supp. of Mot. for Permission to Amend Answer to Add Counterclaims [doc. # 34] at 3. During the Court's conference with the parties on April 1, it was apparent that Defendant had long had in its possession the information necessary to determine whether it had been overcharged under the terms of

the contract. Indeed, Defendant had that information even before the contract was terminated. Once the litigation began, Defendant should promptly have investigated whether it had any counterclaims against Plaintiff arising from the parties' relationship and contract, and had it done so, Defendant should have discovered its newly alleged counterclaims. Yet, Defendant did not assert its counterclaims until discovery was nearly completed, and after the scheduling of this case had already been delayed twice. In these circumstances, the Court concludes that Defendant has failed to proffer an adequate justification for its delay in asserting its claims against Plaintiff. *See Parker v. Columbia Pictures Indus., Inc.,* 204 F.3d 326, 341 (2d Cir.2000).

Of course, " 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion." *Id.* at 339 (quoting *Richardson Greenshields's Secs., Inc. v. Lau,* 825 F.2d 647, 653 n .6 (2d Cir.1987). [FN2] However, in this case, the Court also concludes that Plaintiff would be unfairly prejudiced by allowing the amendment. Discovery is now complete, but both sides agree that additional discovery would be necessary if the Court permitted the amendment. While there is some disagreement about the amount of discovery and the additional delay that discovery would occasion, there is no doubt that additional discovery would be necessary and that there would be additional delay in an already twice-delayed case. Moreover, Plaintiff notes that its claims against Defendant focus on post-termination events, while Defendant's counterclaims are concerned with the parties' pre-termination conduct. While there is certainly some overlap among witnesses and subject matter, the different focus of Defendant's counterclaims also weighs against expanding the scope of this action to include Defendant's newly asserted claims.

> FN2. In *Parker,* the Second Circuit made it clear that Rule 16's good cause standard supercedes the more liberal standard of Rule 15(a) when a motion to amend is filed after the deadline set by a scheduling order for amending pleadings. *See Parker,* 204 F.3d at 340. The scheduling order entered in this case did not include a deadline for amending pleadings.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 813023 (D.Conn.)
**(Cite as: 2004 WL 813023 (D.Conn.))**

Page 3

*3 Finally, the Court has considered the prejudice to Defendant if the Court denies the motion to amend, and the Court concludes that the prejudice to Defendant is minimal. *See Krumme v. Westpoint Stevens Inc.,* **143 F.3d 71, 88 (2d Cir.1998) ("[ C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend.")** (citations omitted). First, there is no danger that Defendant will be barred from pursuing its claims against Plaintiff if it does not raise them in this case. During the conference on April 1, Plaintiff agreed that Defendant could pursue its claims in a separate action against Plaintiff. Second, while it is ordinarily more efficient to deal with all claims in one action, in this case it may well be more efficient or at least equally efficient to address these claims in separate actions. The reason for this is that if Defendant's dispositive motion (which will be filed next week) is granted, this case will be at an end. Defendant will then be free to pursue its claims against Plaintiff in a separate action. Moreover, even if Defendant's dispositive motion is granted and this case must be tried, the parties can tailor the findings they ask this Court to adopt in a manner that will make a separate action unnecessary or that will streamline substantially any separate action that may necessary. Defendant acknowledged as much during the April 1 conference call. Moreover, since the parties agree that any findings the Court makes in this action will have preclusive effect in any separate action between the parties, there is no risk that the two actions will produce inconsistent results. In these circumstances, therefore, the prejudice to Defendant is minimal.

Accordingly, Defendant's Motion for Permission to Amend Answer to Add Counterclaims [doc. # 33] is DENIED.
  IT IS SO ORDERED.

2004 WL 813023 (D.Conn.)

Motions, Pleadings and Filings (Back to top)

• 3:02CV02237  (Docket)
(Dec. 17, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  C

Westlaw.

1998 WL 351578                                                          Page 1
1998 WL 351578 (D.Conn.)
**(Cite as: 1998 WL 351578 (D.Conn.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Patricia WORTHINGTON, Plaintiff
v.
CITY OF NEW HAVEN, Defendant

**No. 3:94-CV-0609 (EBB).**

June 26, 1998.

*RULING ON MOTION TO AMEND COMPLAINT*

BURNS, Senior J.

### INTRODUCTION

*1 The present action is an employment discrimination action brought pursuant to the Americans with Disabilities Act, the Vocational Rehabilitation Act of 1973, and Article First, Section 20, of the Constitution of the State of Connecticut.

The case was tried to the Court on May 13 and 14, 1998. At the close of the evidence, Plaintiff orally moved to amend her Amended Complaint, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure. The Court reserved decision and requested briefing of the issue from the parties before it. The Motion to Amend is now ready for decision.

### STATEMENT OF FACTS

The Court summarizes only those facts believed to be necessary to an understanding of the issues in, and the decision rendered on, this Motion.

The present Motion to Amend asserts that the proposed Amendment conforms to the evidence adduced at trial, without objection thereat, in two separate areas: first, it alleges additional particulars of the claimed failure to accommodate the Plaintiff's disability; and, second, it alleges that the Defendant acted with "reckless indifference" to the Plaintiff's rights.

The first issue raised in the proposed Amendment relates to additional factual allegations that were not set forth explicitly in the First, Second, and Third Counts of Plaintiff's Amended Complaint dated August 18, 1995. Essentially, the proposed Amendment seeks to conform the pleadings to the claimed evidence by specifying additional particulars of the alleged "failure to accommodate" beyond the allegations with respect to the ergonomic chair that was requested by Plaintiff during her employment with Defendant. These additional allegations were, for the most part, also set forth in Plaintiff's Proposed Findings of Fact submitted in the parties' Joint Trial Memorandum. Joint Trial Memorandum at pp. 11-20 (May 6, 1998).

The second issue raised in the proposed Amendment relates to the addition of language alleging that Defendant acted in "reckless disregard" of Plaintiff's civil rights, which goes to Plaintiff's claim for punitive damages. Such claim has been present in this case since the original Complaint and the issue of the availability of such damages was also raised in the Joint Trial Memorandum. Id. at 24.

### LEGAL ANALYSIS

Federal Rule of Procedure 15(b) provides in pertinent part:
> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

As is true with all motions made under Rule 15, leave to **amend** is to be **liberally** allowed in the absence of **prejudice** to the nonmoving party. *Conjugal Partnership v Conjugal Partnership, 22*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 351578
1998 WL 351578 (D.Conn.)
(Cite as: 1998 WL 351578 (D.Conn.))

Page 2

F.2d 391, 400 (1st Cir.1994). The inquiry before this Court, then, is two-fold: first, did Defendant expressly or impliedly consent to the admission of the evidence supporting the allegations of the proposed **Amendment**; and, if the answer to this first inquiry is in the affirmative, will the City be prejudiced thereby ?

\*2 It is beyond cavil that Defendant raised no timely objections to the proffered evidence of the failure of the City to reasonably accommodate Plaintiff in areas other then the ergonomic chair requested by her. Multiple witnesses, including the City's own, testified to requested workplace evaluations, differing work assignment requests, and accommodation of the Plaintiff as to books and other materials she needed to do her job. This testimony was also elicited pre-trial through various depositions of the proffered witnesses, including Plaintiff's treating physician, Dr. Sella, and Sally Esposito, the Director of the Office of Persons with Disabilities. Moreover, Plaintiff asserts that most of the documents included in her trial exhibits were produced at Ms. Esposito's deposition. Defendant does not controvert this assertion. Finally, the Proposed Findings of Fact and the comprehensive list of exhibits contained in the Joint Trial Memorandum more than adequately apprised Defendant of the expanded assertions of lack of reasonable accommodation. Accordingly, the Court will not credit Defendant's belated claim that it had no notice of Plaintiff's numerous and varied requests for accommodations, and the responses to those requests, and finds that Defendant impliedly consented to the trial thereof.

This same testimony, documentary evidence, and the issues set forth in the Joint Trial Memorandum also go to the issue of punitive damages and the standards therefore. For the reasons set forth above, the Court finds that the trial of such issue was also impliedly consented to.

As the Court has answered the first Rule 15(b) inquiry in the affirmative, it must turn to the second avenue of inquiry, that of prejudice to Defendant. "The test for allowing an amendment under Rule 15(b) to conform pleadings to issues impliedly tried in whether the opposing party 'would be prejudiced by the implied amendment, *i.e.*, whether he had a fair opportunity to defend and whether he could

offer any additional evidence if the case were to be retried on a different theory.?" ' *Lomatira v. American Automobile Insurance Co.*, 371 F.2d 550, 552 (2d Cir.1967) *quoting* 3 Moore, *Federal Practice* ¶ 15.13[2], at 993 (2d ed.1966). As Plaintiff's proposed Amendment does not concern a different theory of case as originally pleaded, the question becomes simply one of fair opportunity to defend. The Court finds that the Defendant had such an opportunity, through ample pretrial discovery taken by Plaintiff [FN1] and her comprehensive contribution to the Joint Trial Memorandum. As is the case with any trial to the Court, Defendant was given great leeway in the presentation of its case and its objection, if any, to the presentation of Plaintiff's case. Plainly, then, it is too late in the day to contend it had no fair opportunity to defend this case.

> FN1. The Court also takes into consideration that Defendant did de minumus discovery in this case. The City served no written interrogatories or requests for production on Plaintiff, nor did it take the Plaintiff's deposition, or any other depositions of fact witnesses. The only deposition taken, in fact, was that of Plaintiff's expert witness, Dr. Sella.

### CONCLUSION

For each of the reasons set forth herein, Plaintiff's Motion to Amend Complaint [Doc. No. 62] is hereby GRANTED.

1998 WL 351578 (D.Conn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  D

Westlaw.

1997 WL 570871                                                                    Page 1
1997 WL 570871 (N.D.N.Y.)
**(Cite as: 1997 WL 570871 (N.D.N.Y.))**

▷
Only the Westlaw citation is currently available.


United States District Court, N.D. New York.

Francis HOGAN; and Daniel Masucci, Plaintiffs,
v.
DC COMICS; Warner Communications, Inc; Time
Warner Entertainment Co., L. P;
Nancy Collins; and Paul Lee, Defendants.

**No. 96-CV-1749.**

Sept. 9, 1997.

Duker, Barrett & Gravante LLP, George F.
Carpinello, Esq., Albany, New York, for Plaintiffs.

Bond, Schoeneck & King, LLP, Deborah H.
Karalunas, Esq., Syracuse, New York, for
Defendants.

Fross, Zelnick, Lehrman & Zissu, P.C., Carol F.
Simkin, Esq., Patrick T. Perkins, Esq., New York,
New York, for Defendants.

MEMORANDUM-DECISION and ORDER

HURD, Magistrate J.

BACKGROUND

**\*1** The present motion arises from federal
copyright and state misappropriation claims brought
by the plaintiffs Francis Hogan ("Hogan") and
Daniel Masucci ("Masucci"), on November 4, 1996,
relating to a comic book developed and copyrighted
by plaintiffs. Plaintiffs filed an amended complaint
as of right, to correct the names of the defendants.
The defendants responded to the plaintiff's
complaint with a motion to dismiss. The state law
misappropriation claim was dismissed pursuant to
Fed.R.Civ.P. 12(b)(6), because the complaint failed
to allege solicitation of the manuscript by
defendants and a fiduciary relationship,

implied-in-fact contract, or implied-in-law contract,
which are essential elements of the state law claim. (
*See* Pls.' Not. Mot. Amend Ex. A 29-30 (Tr.
2/28/97 Proceedings).)

At the time of that ruling, plaintiffs immediately
moved to amend the misappropriation claim;
however, that motion was denied without prejudice.
*Id* at 31. Plaintiffs now move for leave to amend
their complaint to set forth a series of allegations in
the misappropriation claim which they believe
would withstand a motion to dismiss.

The motion to dismiss was denied relative to the
copyright infringement claim. Accordingly, the
defendants timely served an answer to the complaint.

On March 14, 1997, the defendants served a notice
to take the deposition of Hogan on March 26, 1997.
The plaintiffs objected to the above notice and
served a first request for the production of
documents.

In a letter dated March 17, 1997, the defendants
requested an order directing Hogan to appear for
the deposition. In a reply letter dated March 18,
1997, the plaintiffs requested that the Hogan
deposition not be held until after defendants had
complied with the plaintiffs' document demands.

A Rule 16 conference was held on March 18, 1997.
At that time, the court also heard oral argument
regarding the above discovery dispute. On March
26, 1997, both parties filed memoranda of law.

On March 27, 1997, defendants moved for
reconsideration of the denial of the copyright
infringement claim. Resolution of the discovery
disputes and entry of a Case Management Order
were held in abeyance pending a determination on
the motion for reconsideration. On September 2,
1997, Hon. Thomas J. McAvoy granted the motion
for reconsideration, and upon reconsideration
denied the defendants' motion to dismiss the
copyright infringement claim. Accordingly, a
determination on plaintiffs' motion to amend their

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Page 2

complaint, the discovery disputes, and a case management schedule must be made.

## FACTS

The plaintiffs are two artists who collaborated in creating a comic book titled *Matchsticks*. *Matchsticks* is a story about a half human half vampire named Nicholas Gaunt who is a deranged creature in search of the truth about his origins. Hogan and Masucci created *Matchsticks* with the intent to distribute it to the public through a comic book publisher. After an initial unsuccessful attempt to distribute it with an independent publisher, the plaintiffs contacted Axel Alonzo ("Alonzo") at DC Comics. Hogan and Masucci then sent a rough draft of three future issues of their comic book to DC Comics for an evaluation. On August 14, 1994, DC Comics notified plaintiffs by letter that it was not interested in publishing *Matchsticks*. However, in the fall of 1996, DC Comics published a comic book titled *Dhampire Stillborn*, which depicts a character named Nicholas Gaunt, a human with latent vampire tendencies who struggles with his past and searches for the truth about his origins.

**\*2** The plaintiffs alleged that publication of defendants' comic book, *Dhampire Stillborn*, constituted a copyright infringement and common law misappropriation.

## DISCUSSION
### I. *AMENDMENT OF COMPLAINT*

Once a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Thus, a court is not required to grant a motion to amend, but such motions should be freely granted. *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir.1995); ***Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234-35 (2d Cir.**1995). However, "[t]he decision to grant or deny leave to amend lies within the sound discretion of the trial court." *Clarke v. TRW, Inc.*, 921 F.Supp. 927, 932 (N.D.N.Y.1996) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Also, "[i]t is the usual practice upon granting a motion to dismiss to allow

leave to replead." *Cortec Indus., Inc v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987).

In determining whether to allow an amendment, the court generally considers several factors, as follows:
"[i]n the absence of any apparent declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given." '

***Rachman,* 46 F.3d at 234** (quoting *Foman*, 371 U.S. at 182). An analysis of these factors will determine whether plaintiffs should be granted leave to amend. Further, any denial of leave to amend must be justified. *Id.*

### A. *UNDUE DELAY*

A motion to amend may be properly denied if it will cause undue delay. ***Rachman,* 46 F.3d at 234 -35**; *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). However, "mere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." ***Rachman,* 46 F.3d at 234-35**. In *Rachman*, the Second Circuit held that the district court did not abuse its discretion when it permitted the defendant to amend its answer four years after the complaint was filed. *Id.* at 235. In the case at bar, the plaintiffs made an immediate motion to amend their complaint when their misappropriation claim was dismissed, filed the present motion only two months after the decision, and there has been no discovery. Thus, there will be no undue delay if the court allows the plaintiffs to amend their complaint.

### B. *BAD FAITH OR DILATORY MOTIVE*

If an amendment is offered in bad faith or with a dilatory motive, then it should be rejected by the district court. *Foman*, 371 U.S. at 182. The defendants claim that the plaintiffs' amendments are

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Page 3

in bad faith and evade the order dismissing their misappropriation claim. However, the record does not show that the plaintiffs are making the amendments in bad faith. Rather, it appears that they are simply clarifying the events surrounding the submission of their comic book. In testimony to their honest effort, plaintiff Hogan swore in affidavit that his allegations are true and that he discussed *Matchsticks* with Alonzo before he sent it to DC Comics.

*3 Although the plaintiffs have made some substantial changes in their pleading, it does not contradict their previous allegations. Rather it clarifies and extends the allegations by adding a step in the submission process. The plaintiffs now allege that they contacted DC Comics first before they sent their copy of *Matchsticks*. This seems realistic since it would be foolish to send an original copy of a comic book without some sort of agreement before hand.

### B. *UNDUE PREJUDICE*

A court should deny a proposed amendment if the amendment would cause "substantial prejudice" to the opposing party. *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir.1968). A court should consider whether the amendment would "(i) require the opponent to expend additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction" when evaluating undue prejudice. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993). Prejudice "solely because of the time, effort and money" expended does not amount to substantial prejudice. *Id.* In the case at bar, there has been no discovery. In addition, the defendants have had knowledge of the plaintiffs' misappropriation claim since the inception of the action. Thus, allowing the amendment would not significantly delay the resolution of the dispute or force the defendant to expend additional resources to conduct discovery and prepare for trial.

### D. *PREVIOUS AMENDMENTS*

"[R]epeated failure to cure deficiencies by amendments previously allowed" is a factor to be considered when evaluating a motion to amend. *Foman*, 371 U.S. at 182. In the case at bar, the plaintiffs have amended their complaint once, as a matter of course. In that amendment, the plaintiffs simply changed the names of the corporate defendants and did not alter any of their allegations or claims. Therefore, the plaintiffs have not repeatedly failed to cure deficiencies by amendments previously allowed.

### E. *FUTILITY OF AMENDMENT*

A court should reject a proposed amendment if it would be futile. *Rachman,* **46 F.3d at 234**. "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Chan v. Reno,* 916 F.Supp. 1289 (S.D.N.Y.1996) (citing *S.S. Silberblatt, Inc v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank-New York,* 494 F.2d 1334, 1338 (2d Cir.1974)). The defendants argue that the plaintiffs' proposed amended misappropriation claim is subject to dismissal because the claim is preempted by the United States Copyright Act ("Copyright Act") and because it fails to state a misappropriation claim. Therefore, it must be determined whether the plaintiffs' amended misappropriation claim would be preempted by the Copyright Act or would be dismissed for failure to state a claim.

#### 1. Standard for Motion to Dismiss

*4 A cause of action shall not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the court must assume that all of the allegations in the complaint are true. *Id.* In reviewing the sufficiency of a complaint at the pleading stage, "the issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 570871
1997 WL 570871 (N.D.N.Y.)
(Cite as: 1997 WL 570871 (N.D.N.Y.))

Page 4

loath to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him to relief. *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 22 (2d Cir.1982).

2. Preemption and the Copyright Act

Section 301(a) of the Copyright Act ensures that all copyright claims are dealt with by Federal Courts. Section 301(a) preempts:

all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.

17 U.S.C. § 301(a). However, there are limits to this federal preemption. Section 301(b) states:

Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106.

*Id.* § 301(b)(3). Section 106 gives a copyright holder the exclusive right to do or authorize reproduction and preparation of derivative works, distribution of copies to the public by sale, rental, lease, lending or other transfer of ownership, and performance or display of the copyrighted work publicly. *Id.* § 106. "Section 301 thus preempts only those state law rights that 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992)(quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588, (1985)).

There is a two step process used to determine whether a cause of action is preempted by the Copyright Act. First, the work in question must fall within the subject matter of the Copyright Act. *Harper*, 723 F.2d at 200. There is no dispute that

the plaintiffs' work is covered by the Copyright Act.

*5 Second, a state law claim is preempted if it is equivalent to a cause of action under the Copyright Act. *Id.* Thus, "misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." *Computer Assocs.*, 982 F.2d at 717. However, a "state law claim is not preempted if an 'extra element' changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim." ' *Id.* at 716 (quoting *Mayer v. Josiah Wedgewood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)). Unfair competition claims grounded in breaches of confidential relationships and fiduciary duties are not preempted. *Id.* at 717. The required showing of breach of duty in those claims provides the extra element, because a breach of duty showing is not required to bring a successful copyright claim. *See id.*

Plaintiffs' proposed amended complaint alleges misappropriation via breach of duty. It specifically alleges that defendants solicited plaintiffs' works and recites the facts surrounding the submission of plaintiffs' work which demonstrate the existence of a legal relationship and an implied-in-fact and implied-in-law contract. Accordingly, the misappropriation claim, as now alleged, contains the extra element necessary to distinguish it from plaintiffs' claim under the Copyright Act. *See id.* The state law misappropriation claim is therefore not preempted by the Copyright Act.

3. The Misappropriation Claim

"In certain situations, the courts of New York will 'afford protection to persons who ... have disclosed their ideas to others in the expectation that the idea would be used, and the use compensated." ' *McGhan v. Ebersol*, 608 F.Supp. 277, 284 (S.D.N.Y.1985) (quoting *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F.Supp. 1204, 1216 (E.D.N.Y.1981), *aff'd without op. sub nom., Vantage Point, Inc. v. Milton Bradley Co.*, 697 F.2d 301 (2d Cir.1982). One such situation is when an individual misappropriates a copyrighted work. To make a claim of misappropriation under New York law, a plaintiff must allege two elements "1) the requisite legal relationship must exist between the parties; and 2) the idea must be novel and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

concrete." *Bieda v. JC Penny Communications, Inc.,* No. 92 Civ. 5910, 1995 WL 437689, at * 7 (S.D.N.Y. July 25, 1995). The requisite legal relationship may be a fiduciary relationship or may be based on an express contract, an implied in fact contract, or a quasi contract. *Id.* Whether an implied contract exists depends upon the general practices of the industry. *McGhan,* 608 F.Supp. at 285. Also, "[a] confidential or fiduciary relationship exists between parties 'where the parties do not deal on equal terms and one trusts and relies on the other." ' *Id* (quoting *Sachs v. Cluett, Peabody & Co.,* 265 A.D. 497, 500, 39 N.Y.S.2d 853 (1st Dep't 1943), *aff'd,* 291 N.Y. 772, 53 N.E.2d 241 (1944)). However, "the mere voluntary act of submitting an idea to one with whom the plaintiff has had no prior dealings will not make the disclosure one in confidence, even if stated to be so." *Vantage Point,* 529 F.Supp. at 1217 (quoting *Official Airlines Schedule Info. Serv., Inc. v. Eastern Airlines, Inc.,* 333 F.2d 672, 674 (5th Cir.1964)). But, whether such a relationship exists is ultimately a question of fact to be determined by the trier of fact, and all a plaintiff must do to withstand a motion to dismiss is allege certain facts that would create this relationship. *McGhan,* 608 F.Supp. at 285.

4. Plaintiffs' Proposed Amended Complaint

\*6 The plaintiffs now allege in their proposed amended complaint that they contacted DC Comics to determine whether DC Comics would be interested in publishing *Matchsticks* and hiring Hogan as a freelance inker. After extensively discussing *Matchsticks,* the plaintiffs now allege that "Axel Alonzo specifically solicited plaintiffs works and told plaintiff Hogan to send *Matchsticks* to DC Comics. At no time did Axel Alonzo tell plaintiff Hogan not to send *Matchsticks* to DC Comics." (Pls.' No. Mot. Ex. B ¶ 24.) The plaintiffs now allege that Alonzo also solicited Hogan as an inker. Furthermore, the plaintiffs now allege that "[i]n direct response to Axel Alonzo's solicitation for *Matchsticks,* plaintiff Hogan forwarded a copy of *Matchsticks* to DC Comics to Axel Alonzo's attention." *Id.* ¶ 26. Finally, the plaintiffs allege that upon receiving and reviewing the copy DC Comics rejected *Matchsticks,* but decided to keep it "on file."

The plaintiffs have now alleged a new set of facts that might create a confidential relationship with the defendants. No longer do the plaintiffs allege that they simply submitted *Matchsticks* to the defendants without any prior discussion or relationship, but now they allege that they submitted *Matchsticks* to DC Comics only after a lengthy conversation with Alonzo, a DC Comics assistant editor. This alleged conversation creates a prior dealing with DC Comics and possibly creates a confidential relationship whose breach could allow recovery under quasi-contractual restitution. Accepting all of the allegations in the proposed amended complaint as true, the plaintiffs have sufficiently alleged a cause of action that would survive a motion to dismiss for failure to state a claim.

II. *DISCOVERY DISPUTE*

In a majority of cases, interrogatory and document discovery are completed prior to depositions. However, this is certainly not a hard and fast rule, and the sequence of discovery is at the discretion of the trial judge. *Cruden v. Bank New York,* 957 F.2d 961, 972 (2d Cir.1992)("A trial judge enjoys wide discretion in its handling of pretrial discovery ..."); *see also Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 753 F.Supp. 1078, 1099 (E.D.N.Y.1990), *aff'd,* 938 F.2d 1574 (2d Cir.1991). Therefore, it is for the court to determine in the interest of fairness and justice to the parties, whether the defendants should be required to comply with the plaintiffs' document discovery prior to conducting their deposition of Hogan.

The parties agree that there shall and will be full and complete document and interrogatory discovery, together with depositions of all of the parties and appropriate witnesses. The only issue at this time is whether the deposition of Hogan should occur before or after the plaintiffs' document discovery.

The first issue to review is the nature and extent of Hogan's proposed deposition. It would appear that his deposition would cover the following areas: (1) development of the *Matchsticks* cartoon; (2) submissions of the three draft copies to the defendants; (3) direct and/or telephone conversations between Hogan and the defendants both before and after the submissions; (4)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

correspondence between the parties both before and after the submissions; and (5) damages.

*7 In their demand for the production of documents, the plaintiffs seek all documents related to the *Dhampire: Stillborn* cartoon. Most of the requested documentation is internal to the defendants involving the development of *Dhampire: Stillborn* and the use made, if any, of the *Matchsticks* concept. The only requested documents which directly relate to contact with the plaintiffs is the demand for copies of correspondence and the defendants' own notes of meetings or conversations with the plaintiffs. Otherwise, the demand seeks internal documents created by the defendants.

The defendants argue that they should be entitled to take Hogan's deposition without his having the benefit of all of their internal documents. It is their theory that under such circumstances, he would be likely to tailor his testimony. In other words, it is their position that he might testify as to how he created *Matchsticks* after reviewing how the defendants created *Dhampire: Stillborn* so as to make a case for copyright infringement. Also, the defendants fear that his testimony regarding conversations, meetings, and correspondence may be tailored after reviewing the defendants' notes or memoranda in a manner to advance his copyright infringement claim and to avoid discrepancies that might hurt his credibility.

In essence, plaintiffs contend that Hogan should have the benefit of document discovery in order to refresh his recollection concerning conversations, meetings, correspondence, and submissions to the defendants. They argue that it would be unfair for him to be deposed without the benefit of reviewing all of defendants' documents. The plaintiffs argue that it would be unfair for the defendants to have the benefit of their documents at the time of their depositions, while Hogan would be deprived of that opportunity. The plaintiffs further contend that Hogan would undoubtedly be subjected to a second deposition following document discovery which would also be unfair.

Except to a limited extent, the plaintiffs' arguments cannot be accepted. None of the documents requested are related to the plaintiffs' development

of the *Matchsticks* cartoon prior to its submission to the defendants in August 1994, and therefore would be of no assistance to Hogan in refreshing his recollection concerning that area of his testimony. Further, demands "2" through "16" would be of no assistance to Hogan to refresh his recollection concerning meetings, or correspondence with the defendants, or submissions to the defendants.

With respect to demand No. "1," copies of the "correspondence with plaintiffs" may be helpful in refreshing Hogan's recollection. The defendants' "notes of conversations or meetings with plaintiffs" might either refresh Hogan's recollection or cause him to tailor his testimony. The court fails to see why Hogan should have the benefit of defendants' notes. If he should testify contrary to the notes, this would be an issue of credibility. In a similar vein the court would not be inclined to allow, over objection, discovery of any notes or memoranda that Hogan may have of such meetings prior to the deposition of defendants' witnesses. "(N)otes of conversations or meetings among any employees of defendants or third-parties in which plaintiffs were discussed," while perhaps important to Hogan, would again, be of no help in refreshing his recollection of the events in question concerning direct contact between the plaintiffs and defendants.

*8 However, if, at the time of any conversations or meetings, Hogan himself prepared notes or memoranda that are now in the possession of the defendants, he should certainly have an opportunity to review them prior to his depositions. In other words, his own notes may refresh his recollection of events, and he is clearly entitled to same prior to his deposition. Also, if, there are verbatim recorded stenographic transcripts of any conversations or meetings between plaintiffs and defendants, these should be disclosed prior to anyone's deposition.

The second argument regarding a second deposition is not persuasive. If a second deposition of Hogan is requested, it will be limited and only with the permission of the court.

The cases cited by the plaintiffs are not persuasive. *Roberts v. Americable Int'l Inc.,* 883 F.Supp. 499, 505 (E.D.Cal.1995), involves secretly recorded tapes of a conversation with the proposed deponent. As far as the court is aware, no such situation

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

exists in this case. Again, if there are any recorded conversations with Hogan, or verbatim minutes of any meetings or telephone conferences, they would be subject to disclosure prior to his deposition. General notes taken at meetings or with regard to direct or telephone conversations by participants in conferences do not fall within the same category.

*Parla v. Matson Navigation Co.*, 28 F.R.D. 348 (S.D.N.Y.1961), involves a statement given by the plaintiff to the defendant. Again, the court is unaware of any statement given to the defendants other than perhaps the correspondence and submissions in August 1994. Again, if the defendants are in possession of any statements, signed or otherwise, from Hogan, they must be disclosed prior to Hogan's deposition.

CONCLUSION

Because the proposed amended complaint states a common law misappropriation claim, that claim is not preempted by the Copyright Act. That claim would survive a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), and therefore would not be futile. Moreover, permitting such an amendment of the complaint will not result in undue delay or undue prejudice. Finally, the plaintiffs have not offered the amendment in bad faith or with a dilatory motive, and have not repeatedly failed to cure deficiencies by previous amendments. Therefore, plaintiff's motion to amend the complaint must be granted.

Defendants argument that providing Hogan their internal documents prior to his depositioon would provide him the opportunity to tailor his testimony accordingly in order to bolster his claim is well taken. However, Hogan should have the opportunity to review all documents prepared by himself which are now in the possession of the defendants, as well as access to transcripts of conversations or meetings between plaintiffs and defendants, in order to refresh his recollection prior to his deposition.

Accordingly, it is

ORDERED that

1. Plaintiffs' motion for leave to file a second

amended complaint is GRANTED;

*9 2. plaintiff may file and serve the proposed second amended complaint on or before September 29, 1997;

3. defendants shall serve upon the plaintiffs' attorneys copies of all correspondence between the parties; all signed or unsigned statements of plaintiffs; all verbatim recorded or transcribed transcripts of meetings, and direct or telephonic conversations with plaintiffs, and copies of the August 1994 submissions on or before October 15, 1997;

4. the deposition of plaintiff Francis Hogan shall be conducted between October 15, 1997 and October 30, 1997; and thereafter

5. the parties' attention is directed to the attached Uniform Pretrial Scheduling Order.

IT IS SO ORDERED.

1997 WL 570871 (N.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.