# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d  
2002 WL 31106383 (D.Conn.)  
**(Cite as: 2002 WL 31106383 (D.Conn.))**

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

ARC/CONNECTICUT et al.  
v.  
O'MEARA et al.

No. 3:01CV1871(JBA).

Aug. 20, 2002.

Class action was brought challenging state's operation of its home and community based waiver program for mentally retarded individuals. On plaintiffs' motion to amend complaint, and additional plaintiffs' motion to intervene, the District Court, Arterton, J., held that: (1) amendment would be allowed, and (2) intervention would be allowed.

Motions granted.

**[1] Federal Civil Procedure ⇔841**  
170Ak841 Most Cited Cases  
Plaintiffs challenging state's operation of its home and community based waiver program for mentally retarded individuals would be allowed to amend complaint; though new claims significantly expanded scope of action, motion was timely, there was no evidence of bad faith or prejudice, and proposed new claims were not futile. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[2] Federal Civil Procedure ⇔331**  
170Ak331 Most Cited Cases  
Additional named plaintiffs would be allowed to intervene in class action suit challenging state's operation of its home and community based waiver program for mentally retarded individuals; although new plaintiffs were already members of proposed class, their factual circumstances were not reflected by any currently named plaintiffs. Fed.Rules Civ.Proc.Rule 24(b), 28 U.S.C.A.

Ruling on Pending Motions [Docs. 21 & 43]

ARTERTON, J.

*1 This action was filed October 2, 2001, by Arc/Connecticut (a statewide not-for-profit advocacy organization) and ten individual plaintiffs, as a class action "on behalf of all persons eligible to receive services under Connecticut's Home and Community Based Waiver for Individuals with Mental Retardation ... who have requested but not received waiver services." Compl. ¶ 20. The Complaint alleges that Connecticut, as part of its Medicaid state plan, provides as an optional service (that is, a service that can be, but is not required to be, included in the state's Medicaid plan) payment for "services in an intermediate care facility for the mentally retarded" ("ICF/MR"). 42 U.S.C. § 1396d(a)(15). "States that provide ICF/MR services may also implement a home and community based waiver program for persons with mental retardation as an alternative to the provision of ICF/MR services.... Such services include an array of home and community-based services for eligible recipients who, in the absence of the waiver program, would require institutionalization in an ISF/MR." Compl. ¶ 31.

The complaint alleges that defendants, the Commissioner of Mental Retardation for the State of Connecticut and the Commissioner of Social Services for the State of Connecticut, have violated their rights under the Medicaid statute, the U.S. Constitution and the Americans with Disabilities Act by failing to provide adequate services under the waiver, failing to provide them with a choice between institutional and home and community based services, failing to provide them with services under the waiver in a reasonably prompt manner, failing to provide them with notice and opportunity to be heard regarding the denial of benefits under the waiver, and failing to provide them with residential and day habilitation services in the most integrated setting appropriate to meet their needs.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31106383 (D.Conn.)
**(Cite as: 2002 WL 31106383 (D.Conn.))**

Page 2

In the Report of Parties Planning Meeting [Doc. # 7], defendants noted, in accordance with the order on pretrial deadlines, that the complaint may have curable defects:

> Notably, the Complaint fails to distinguish between [Department of Mental Retardation ("DMR") ] services generally and Medicaid Waiver services. The defendants maintain that not all services provided by DMR are coverable as Medicaid Waiver services. Plaintiffs fail to allege that they have applied for Medicaid Waiver services (as opposed to applying for DMR services), that they have been denied or placed on a waiting list for Waiver services, or even that the services they have requested from DMR could be covered under the Waiver program.

[Doc. # 7] at 5.

I. Motion to Amend

A. Proposed Amendment

On February 15, 2002, less than five months after this action was commenced and before the Court's March 1, 2002 deadline for amendments to pleadings, see Scheduling Order of December 13, 2001 [Doc. # 10], plaintiffs filed a motion to amend [Doc. # 22]. The proposed Amended Complaint alleges, *inter alia*, that defendants have:

*2 (1) implemented the Waiver program "such that it is only available to obtain federal funding for services ... DMR already provides and not to enable individuals who need services to obtain them." This is allegedly accomplished by refusing to allow eligible individuals to apply or discouraging them from applying unless they are already receiving DMR services. Am. Compl. ¶ 2.
(2) limited Waiver services in amount, duration and scope "to only those services the eligible individuals are already receiving." *Id.* ¶ 3.
(3) failed to afford eligible individuals "notice and a fair hearing when they are denied the opportunity to apply for [Waiver] services or are provided services that are unduly limited in amount, duration and scope." *Id.* ¶ 4.
(4) failed to inform eligible individuals of alternatives to ICF/MR services, depriving them of the choice between institutional and home/community based services. *Id.* ¶ 5. The proposed Amended Complaint, as defendants suggest, significantly expands the scope of this case. Plaintiffs themselves appear to concede this, describing the amendment as follows:

> [P]laintiffs' complaint no longer makes the single claim that the class members are persons who are on a lengthy waiting list for waiver services. Rather, the proposed class includes persons who have been misinformed about the Waiver, persons who have been discouraged from applying for the Waiver, persons who are participants in the Waiver program, but are allowed to obtain services that defendants have available rather than the services [t]hat they need, and persons who remain institutionalized because such persons are not permitted to apply for Waiver funding until after they have been discharged from the institution.

Pl.'s Mem. Opp. Mot. Quash [Doc. # 25] at 20-21. Plaintiffs maintain that their proposed amendment is their attempt "to state their claims as clearly as possible at this early stage of the proceeding." Pl.'s Mem. Supp. Mot. Amend [Doc. # 22] at 3. Defendants assert that the new claims will require "factual discovery into a host of areas that are not challenged in the existing complaint," Def.'s Mem. Opp. Mot. Amend [Doc. # 30] at 3, and claim that "[t]hese new proposed claims would unduly burden the defendants by requiring significant additional discovery, and substantially complicate the issues that must be addressed by the Court--resulting in delay in the disposition of this action," *id.*

Beyond prejudice, defendants argue that the proposed amendment is futile. "Without in any way attempting to engage in full-fledged briefing at this preliminary stage," Def.'s Mem. Opp. Mot. Amend [Doc. # 30] at 5, defendants raise five arguments: (1) the proposed class includes as plaintiffs those who have never applied to participate in the Waiver program; (2) the proposed class includes all individuals on the DMR waiting list for residential services, even though plaintiffs allegedly concede that most of these individuals do not immediately need residential services; (3) the proposed class includes residents of ICFs/MR even though a Medicaid regulation provides that an individual currently residing in an ICF/MR is not eligible to participate in the Waiver program; (4) the request for injunctive relief includes a request for an order requiring residential placement of all individuals who need placement, even though such a placement

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31106383 (D.Conn.)
**(Cite as: 2002 WL 31106383 (D.Conn.))**

Page 3

is not a benefit that may be provided under the Waiver program; and (5) the possible scope of the proposed class may exceed the numerical limits of Connecticut's Waiver program.

B. Analysis

*3 [1] After a responsive pleading has been filed, "a party may **amend** the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "Parties are generally allowed to **amend** their pleadings absent bad faith or **prejudice**." *Commander Oil Corp. v. Barlo Equipment Corp.*, 215 F.3d 321, 333 (2d Cir.2000) (citing *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)). In exercising its broad discretion in this regard, the Court takes into account considerations of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by **amendments** previously allowed, undue **prejudice** to the opposing party by virtue of allowance of the **amendment**, and futility of **amendment**. *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir.1998) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also United States on behalf of Maritime Admin. v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 124, 889 F.2d 1248, 1254 (2d Cir.1989) (discretion of the Court with regard to motions seeking leave to **amend** "must be exercised in terms of a justifying reason or reasons consonant with the **liberalizing** ' spirit of the Federal Rules." ') (quoting *Foman*, 371 U.S. at 182 and citing Fed.R.Civ.P. 1 (rules to be construed "to secure the just, speedy, and inexpensive determination of every action")).

Although plaintiffs' proposed Amended Complaint broadens the scope of this case, the amendment was submitted soon after the action was commenced and well within the time set by the Court's scheduling order for the filing of amendments. There is no claim of bad faith, undue delay, repeated failure to cure defects by amendment or dilatory motive. Additionally, plaintiffs appear to be responding to defendants' assertion that the original complaint is defective in failing to distinguish between DMR services and Waiver services. [FN1] Since defendants only claim prejudice "unless there [is] a substantial modification of the Scheduling Order, allowing additional time for factual discovery, the sequential (rather than simultaneous) filing of expert reports, and additional time for the filing of rebuttal expert reports," Def.'s Mem. Opp. Mot. Amend [Doc. # 30] at 3, any prejudice can be obviated by appropriate amendments, as necessary, to the scheduling order.

> FN1. While defendants' assertion presupposes an amendment alleging that each individual applied for Waiver services specifically and was thereafter rejected, plaintiffs have responded more broadly by claiming that defendants' implementation and alleged undue limitation of the Waiver program is itself improper.

Mindful of the early procedural posture of the case, the lack of full briefing on these futility issues, which will undoubtedly be raised and developed at subsequent stages of this case, the Court has insufficient basis, at this stage, to conclude that "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted), and thus does not conclude that plaintiffs' proposed amendments are futile. While defendants point to "[t]he requirement of an application ... stated generally in generic Medicaid regulations that apply to all aspects of the Medicaid program" and explicit and implicit requirements in the specific Waiver and implementing regulations at issue, Def.'s Mem. Opp. Mot. Amend [Doc. # 30] at 5 n. 2, the plaintiffs allege that defendants actively mislead otherwise eligible individuals about the availability of Waiver services [FN2] and refuse to accept applications. [FN3] Inasmuch as such allegations are claimed by plaintiffs to implicate both the Medicaid and non-Medicaid portions of their claim, defendants have not shown, solely by reference to alleged Medicaid application requirements, that there is no set of facts under which relief can be granted in the entirety of the proposed Amended Complaint.

> FN2. *E.g.*, Am. Compl. ¶ 26 ("Defendants advised Mrs. Austin-Small

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31106383 (D.Conn.)
**(Cite as: 2002 WL 31106383 (D.Conn.))**

Page 4

that an application for the Waiver made no sense because the Waiver has nothing to do with obtaining residential services.").

FN3. *E.g.,* Am. Compl. ¶ 28 ("When she specifically requested permission to apply for Waiver funding to pay for a community residential placement, Mrs. Sage was told that she couldn't apply until DMR located a residential placement for Paula.").

*4 Defendants base their claim that the proposed class includes persons on the waiting list who do not immediately need residential services on their own assessment and characterization of these individuals rather than on plaintiffs' actual allegations in the proposed Amended Complaint. *See* Def.'s Mem. Opp. Mot. Amend [Doc. # 30] at 6 (characterizing plaintiffs' reference to a DMR classification scheme as an "acknowledgment that *DMR has determined* that most of these individuals do not need residential services in the immediate future") (emphasis added). Defendants assume the validity and correctness of their own classification system (referenced in Am. Compl. ¶ 57) instead of assuming the truth, as the Court must for these purposes, of the plaintiffs' allegation that "[a]ll plaintiffs are eligible for services in an ICF/MR," Am. Compl. ¶ 70.

Defendants' assertion that current ICF/MR residents should not be included in the class based on a Medicaid regulation (42 C.F.R. § 441.301(b)(1)(ii)) that excludes such individuals from receiving Waiver services while they are residents in an ICF/MR is unavailing, as plaintiffs assert that the putative class includes ICF/MR residents who are "eligible for [Waiver services] and are institutionalized *because they are unable to access* [Waiver] funding for community residential services they need." Am. Compl. ¶ 37 (emphasis added). Thus, plaintiffs' challenge to the alleged improper implementation of the Waiver program as perpetuating plaintiffs' institutionalization should be permitted by way of amendment.

Defendants' arguments regarding the relief proposed in the Amended Complaint (potential class size versus the limited number of waiver slots available and an assertion that plaintiffs cannot seek residential placement via remedial order) are vastly premature, as no class has been quantified or certified, much less has any liability determination been made for which appropriate injunctive relief can be fashioned, notwithstanding the proposed Amended Complaint's prayer for relief. *See, e.g., Owens v. Housing Authority of Stamford,* 394 F.Supp. 1267, 1274 (D.Conn.1975) ("The propriety of the redress requested must, of course, await more advanced steps in this litigation.").

II. Motion to Intervene

[2] On June 3, 2002, fifteen additional disabled individuals moved to intervene in the action. The proposed intervenors are represented by the same counsel as the original plaintiffs, and the allegations against defendants are identical to those raised in the proposed Amended Complaint. Defendants oppose the motion because of the expansion of legal issues in the proposed Amended Complaint, which the Court has now determined will be permitted, and because the class is already adequately represented and the proposed intervenors add no new issues.

A party "may be permitted to intervene in an action [under Rule 24(b) ] when an applicant's claim or defense and the main action have a question of law and fact in common." Fed.R.Civ.P. 24(b).

*5 Permissive intervention is wholly discretionary with the trial court. The principal consideration set forth in the Rule is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. The court also will consider whether the applicant will benefit by intervention. Other relevant factors include the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.
*U.S. Postal Service v. Brennan,* 579 F.2d 188, 191-192 (2d Cir.1978) (citations & internal quotations omitted).

Given the basis for defendants' objection that the intervenors bring nothing new to the table, there can be no dispute that there are common questions of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31106383 (D.Conn.)
(Cite as: 2002 WL 31106383 (D.Conn.))

Page 5

law and fact between the claims of the proposed intervenors and the original plaintiffs, which counsels in favor of permitting intervention. Further, because the proposed intervenors and original plaintiffs are all represented by the same attorneys and the proposed intervenors are already part of the proposed class, the Court discerns no potential delay or prejudice in the adjudication of the rights of the original parties.

To defendants' arguments of redundancy, plaintiffs respond that while the proposed intervenors may be covered by the proposed class definition, "the facts and circumstances relating to each of the putative intervenors" highlight or show "aspects of illegal conduct not covered by allegations relating to the existing plaintiffs." Pl.'s Reply [Doc. # 52] at 10. They note that several of the intervening plaintiffs allege factual circumstances supporting the claim of illegality which are not reflected by any of the current plaintiffs: that defendants failed to inform them of feasible alternatives under the Waiver or to offer them a choice of either ICF/MR or Waiver services, and that defendants have refused to identify their need for residential supports in their individual plans and that defendants have failed to provide fair hearings to challenge limited and inadequate waiver services.

Beyond plaintiffs' claim that the additional plaintiffs are necessary to maintain an Article III case or controversy as to all allegations in the complaint and to "add to the Court's understanding of the scope and breadth of the claims," Pl.'s Mem. [Doc. # 44] at 30 (quoting *German v. Federal Home Loan Mortg. Corp.*, 896 F.Supp. 1385, 1392 (S.D.N.Y.1995)), defendants' opposition to intervention assumes the certification of this case as a class action. However, denial of plaintiffs' motion for class certification would leave the proposed intervenors "competing for the same pool of limited state resources" as the original plaintiffs, Pl.'s Mem. [Doc. # 44] at 28, and would presumably simply result in the filing of a second lawsuit similar to this suit. [FN4]

> FN4. The Court awaits completion of briefing on the recently filed motion for class certification, and expresses no opinion as to its merits.

*6 For all of the reasons set out above, the Court concludes that it is an appropriate exercise of discretion to permit these proposed intervenors to join this suit as plaintiffs.

III. Conclusion

For the reasons set out above, plaintiffs' Motion to Amend [Doc. # 21] and Motion to File an Intervening Complaint [Doc. # 43] are GRANTED. The Clerk is directed to docket the Amended Complaint and the Intervening Complaint.

2002 WL 31106383 (D.Conn.)

Motions, Pleadings and Filings (Back to top)

- 3:01CV01871 (Docket)
  (Oct. 02, 2001)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

**Westlaw.**

1991 WL 537530   Page 1
1991 WL 537530 (D.Conn.)
**(Cite as: 1991 WL 537530 (D.Conn.))**

C
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Maura DONAHUE
v.
UNISYS CORPORATION.

**Civ. No. H-89-670 (JAC).**

Feb. 15, 1991.

Emanuel N. Psarakis, David A. Kulle, Robinson & Cole, Hartford, CT, for plaintiff.

Diana Garfield, Siegel, O'Connor, Schiff, Zangari & Kainen, P.C., Hartford, CT, for defendant.

*RULING ON PENDING MOTIONS*

JOSE A. CABRANES, District Judge:

*1 In her eight-count Amended Complaint (filed Jan. 26, 1990) ("Complaint"), plaintiff alleges that when defendant terminated her, it violated Connecticut statutes protecting an employee's First Amendment rights (Count One) and rights to payment of wages (Count Two); it violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (1988) ("ERISA") (Count Three); it failed to abide by promises and representations on which plaintiff relied to her detriment (Count Four); it made false and malicious statements to plaintiff's fellow employees and former clients that injured plaintiff's professional reputation (Count Five); it intentionally caused plaintiff emotional distress (Count Six); it breached an implied covenant to act in good faith and to deal fairly with plaintiff (Count Seven); and it wrongfully discharged plaintiff (Count Eight).

Pending before the court is defendant's Motion for Summary Judgment (filed Oct. 10, 1990) in which defendant has moved for summary judgment on all eight counts of the Complaint. Also pending is Plaintiff's Motion to Amend Complaint (filed Nov. 9, 1990) in which plaintiff seeks leave to amend the Complaint by adding a ninth count alleging negligent misrepresentation.

I. BACKGROUND

Plaintiff began her employment with Sperry Corporation as a Systems Analyst in 1983, and she was promoted to the position of Account Sales Representative in 1985. Sperry Corporation and the Burroughs Corporation merged in 1986 to form Unisys Corporation. Plaintiff alleges that she was one of defendant's top performing sales representatives. In 1987, after she submitted a letter of resignation, the branch manager, Rodney Small, and the district manager, Norman Rich, allegedly promised and represented to the plaintiff that she would be assigned certain preferred accounts to induce her to remain with the defendant. Based on these representations, plaintiff claims that she elected to remain with the defendant, foregoing other job possibilities.

Plaintiff also alleges that, in April 1988, she was promised a 7% raise effective that September. In August 1988, plaintiff submitted an employee development plan in which she noted that accounts previously promised to her had become available but had not been assigned to her. In September, both Small and Rich presented plaintiff with a sixty-day personal improvement program--the first time she had ever received one--in which they stated that her job performance was unacceptable and warned that she might be terminated unless she showed significant improvement.

In October 1988, plaintiff inquired of the Director of Human Resources, William Kane, why her 7% raise had not taken effect in September as promised, and she was informed that Rich had cancelled it. Plaintiff claims that Rich criticized her for having contacted Kane and accused her of disloyalty. Several weeks later, plaintiff alleges that Rich

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530
1991 WL 537530 (D.Conn.)
(Cite as: 1991 WL 537530 (D.Conn.))

Page 2

publicly accused her of spying and "ransacking" both his and Small's offices. On October 31, 1988, plaintiff was discharged.

*2 Plaintiff claims further that following her termination, defendant, through its agents and employees, stated to customers that she had performed unprofessionally and improperly. Defendant has allegedly failed to pay to plaintiff the numerous and substantial commissions to which she is entitled. She also claims that she was denied the benefits of a five-year pension that was scheduled to vest in January 1989--two months after she was terminated.

## II. DISCUSSION
### A. Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### 1. Violation of First Amendment Rights (Count One)

Under Connecticut law, any employer
> who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution ... provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge....

Conn.Gen.Stat.Ann. § 31-51q (West 1987).

It is well established that "[t]he inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n. 7 (1983). The Court in *Connick* held that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147. This court has previously held that the *Connick* analysis "would be as appropriate in the private employment context as it is in the context of public employment." *Anderson v. E & J Gallo Winery*, Civil No. H-85-295 (JAC), slip op. at 13 (D.Conn. Nov. 7, 1985).

*3 Plaintiff argues that her inquiry into the status of her raise involved matters of public concern because "[t]here is a clear public policy in this state against the withholding of wages, a policy enunciated by the courts and legislature." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (filed Nov. 9, 1990) ("Plaintiff's Memorandum") at 16.
Under Connecticut law, "[a]ny person who or corporation which withholds any part of the wages of any person, because of any agreement expressed or implied requiring notice before leaving the employment, shall be fined not more than fifty dollars." Conn.Gen.Stat. § 31-70 (West 1987).

Plaintiff stated in her deposition that the only

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530
1991 WL 537530 (D.Conn.)
(Cite as: 1991 WL 537530 (D.Conn.))

Page 3

reason she discussed the issue of her raise with Kane was to "question[ ] why it hadn't appeared in [her] paycheck." Deposition of Maura Donahue (Feb. 9, 1990), Defendant's Statement of Undisputed Facts and Memorandum in Support of Summary Judgment Motion ("Defendant's Statement"), Exhibit A, at 86.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. It is clear from the record that plaintiff's inquiry into her own raise was a matter of purely private concern. The fact that Connecticut provides that an employer shall not withhold any part of the wages of any person, Conn.Gen.Stat.Ann. § 31-70 (West 1987), does not transform a question about the amount of one's paycheck into a matter of public concern. In the employment context, it is indeed difficult to conceive of a matter that is more private than making inquiries about one's own salary. Plaintiff's suggestion that her question about her raise "is akin to an employee's expressing concern to its employer over a discriminatory Title VII violation," Plaintiff's Memorandum at 16, reveals a profound misunderstanding of the unique public concern over issues of illegal discrimination. Her conventional inquiries about the size of her paycheck--while no doubt raising serious matters for plaintiff herself--simply do not, under the circumstances of this case, raise matters of public concern sufficient to bring her within the protection of section 31-51q of the Connecticut General Statutes. Accordingly, defendant's motion for summary judgment with respect to Count One is granted.

### 2. *Violation of Rights to Wages (Count Two)*

In Count Two of her Complaint, plaintiff alleges that in failing to pay the commissions and other wages to which she was entitled, defendant violated Conn.Gen.Stat. § 31-71a to 71i. [FN1] Defendant claims that it is entitled to summary judgment on this count because plaintiff "has failed to adhere to mandatory commission dispute resolution procedures explicitly set forth in her commission agreement" and because she never had an enforceable right to the 7% wage increase. Memorandum in Support of Defendant's Motion for Summary Judgment (filed Oct. 10, 1990) ("Defendant's Memorandum"), at 11.

*4 Plaintiff's claim for unpaid *wages* depends for its success on the nature of the promise made to her by the defendant. Whether the defendant actually promised that she would receive the 7% raise and whether she relied on that promise are material issues of fact that are vigorously disputed by the parties. "[O]n a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir.1975); *Schering Corp. v Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983). Defendant's motion for summary judgment on the issue of unpaid wages is denied.

Plaintiff's claim for unpaid *commissions* presents a different question altogether. Plaintiff does not deny that she was required to comply with the dispute resolution procedures in the sales compensation plan. Indeed, her argument is that she had certain discussions with administrative personnel of the defendant both prior to and after her termination on November 1, 1988 that together "constitute substantial compliance with contractual dispute resolution procedures." Plaintiff's Memorandum at 19. The Sales Compensation Plan explicitly provides that "[t]he Sales Representative and the Company agree that [the dispute resolution] procedure is mandatory and a prerequisite to any other remedy that may be available concerning the recovery of incentive compensation provided for by this Plan." Unisys U.S. Information Systems Sales Compensation Plan, Defendant's Statement, Exhibit L, at sec. V, para. F. Included among the steps of the dispute resolution procedure are the requirements that the sales representative send a letter to the Branch/District Manager explaining the basis of the grievance, *id.*, para F(2)(a); that a memorandum be sent to the Manager accountable for the Commission Department requesting further review, *id.*, para F(2)(b); and that, should there be no resolution of the grievance, a final written request for a full review be made to the Division Vice President/Director, Human Resources, or to a designee, *id.*, para. F(2)(c).

Plaintiff asserts that she spoke to Rich, the district manager, who told her to speak with her Team

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530  
1991 WL 537530 (D.Conn.)  
(Cite as: 1991 WL 537530 (D.Conn.))

Page 4

Leader, John Ferrigno. Nothing came of these discussions, and after she was terminated, plaintiff asserts that she "was in frequent contact with the defendant's office in Blue Bell, Pennsylvania, that was responsible for the administration and payment of commissions." Plaintiff's Memorandum at 19.

In the alternative, plaintiff contends that if these discussions did not amount to substantial compliance with the grievance procedure, it was because following the dispute resolution procedures would have been futile. "[A] party need not exhaust an inadequate or futile administrative remedy." *Town of Greenwich v. Liquor Control Comm'n*, 191 Conn. 528, 541-42, 469 A.2d 382, 389 (1983). Unlike the situation where an independent arbitrator is designated to resolve the dispute, defendant's procedures would have been futile "particularly because the plaintiff was fired by the very individuals that would have been involved in that procedure." *Id.* at 20. Whether or not it was reasonable for plaintiff to conclude that pursuing the dispute resolution procedures would have been futile is an issue of fact that cannot be resolved at this stage in the proceedings. Therefore, defendant's motion for summary judgment on the question of unpaid commissions must be denied.

### 3. *Violation of ERISA (Count Three)*

*5 It is unlawful under section 510 of ERISA for an employer to discharge an employee "for the purpose of interfering with the attainment of any right to which [a participant under an employee benefit plan] may become entitled under the plan." 29 U.S.C. § 1140 (1988). Plaintiff has alleged that she was discharged two months prior to the vesting of certain benefits under a five-year pension plan. Complaint, para. 26. Furthermore, she asserts in her affidavit that when Small convinced her not to resign in August 1987, he "stated in this meeting that he thought I would not resign until I had reached my five-year vested pension date, which was in January 1989." Affidavit of Maura Donahue (Nov. 8, 1990), Plaintiff's Statement of Disputed Material Facts ("Plaintiff's Statement"), Exhibit A, para. 13, at 4.

Our Court of Appeals has recognized that direct evidence of discrimination in violation of section 510 of ERISA is rarely available and that an employee may proceed through the presentation of indirect evidence by following the procedure first laid out in the context of Title VII in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *see Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1112 (2d Cir.1988).

In order to establish a prima facie case under section 510 of ERISA, plaintiff must show (1) that she was a participant in a benefit plan under ERISA; (2) that she was qualified for the position of Sales Representative; and (3) that her discharge only two months before her pension rights would vest and the resulting savings to defendant are circumstances that give rise to an inference of discrimination. *Id.* at 1115. Taking plaintiff's allegations as true for the purposes of considering defendant's motion for summary judgment, plaintiff has clearly established a prima facie case of unlawful discrimination in violation of section 510 of ERISA.

Once the plaintiff has made out a prima facie case, the burden then shifts to "come forward and articulate some legitimate, nondiscriminatory reason for the employer's actions." *Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.*, 713 F.2d 940, 951-52 (2d Cir.1983). Defendant's stated reasons for discharging plaintiff--her lackluster sales performance and the breakdown of trust and communication between plaintiff and management, Defendant's Memorandum at 15--are legitimate and nondiscriminatory. The burden shifts finally to plaintiff "to prove by a preponderance of the evidence that the reasons advanced are simply a pretext for discrimination." *Dister*, 859 F.2d at 1115.

On summary judgment, plaintiff's burden is to "create a genuine issue of fact as to [defendant]'s offered reasons or as to a discriminatory motive." *Id.* The question at this stage is whether there exist facts from which a reasonable jury could conclude that the employer's articulated reasons for terminating plaintiff were "so lacking in merit as to call into question [their] genuineness." *Id.* at 1116. The mere fact that plaintiff disputes defendant's proffered reasons for discharging her is not sufficient to raise a genuine issue of material fact. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) ("mere conclusory

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530
1991 WL 537530 (D.Conn.)
(Cite as: 1991 WL 537530 (D.Conn.))

Page 5

allegations or denials" are insufficient to defeat motion for summary judgment). Viewing the evidence in the light most favorable to plaintiff, I find that there is no evidence that would allow a trier of fact reasonably to conclude that defendant's reasons for terminating plaintiff are either "implausible or unworthy of credence." *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1564 (11th Cir.1987) (quoted in *Dister*, 859 F.2d at 1116). Indeed, plaintiff herself asserted that there had been a "[t]otal breakdown of trust/commitment and lack of communication with present district management." Memorandum from Maura Donahue to Bill Kane, Eastern Region Human Resources (Oct. 24, 1988), Defendant's Statement, Exhibit P, para. 1. The statement made by Small over one year earlier, suggesting that he knew when plaintiff's pension rights would vest, is simply insufficient to call into question the genuineness of defendant's reasons for discharging plaintiff. Accordingly, defendant's motion for summary judgment on Count Three of the Complaint is granted.

### 4. *Promissory Estoppel (Count Four)*

*6 Plaintiff alleges that she relied to her detriment on defendant's promises that she would be assigned certain preferred accounts and that she would receive a raise. Plaintiff asserts that defendant made specific representations with the purpose of convincing her not to resign and that she chose to stay, foregoing certain lucrative alternatives.

Whether or not defendant actually made these promises and whether plaintiff reasonably relied on them are questions of fact that simply cannot be resolved at this stage of the proceedings. Defendant's motion for summary judgment on Count Four is denied.

### 5. *Defamation (Count Five)*

Plaintiff alleges that defendant made false and malicious statements to fellow employees and former clients that injured plaintiff's personal and professional reputation. Under Connecticut law, slander is actionable per se "only if [the spoken words] charge a general incompetence or lack of integrity. They are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity." *Proto v. Bridgeport Herald Corp.*, 136 Conn. 557, 567, 72 A.2d 820, 826 (1950).

Whether or not the alleged defamatory words could reasonably be considered defamatory in any sense is a matter for the court to decide. *Charles Parker Co. v. Silver City Crystal Co.*, 142 Conn. 605, 612, 116 A.2d 440, 444 (1955). Plaintiff alleges that the following remarks were slanderous: (1) Small told a sales engineer with whom plaintiff had worked closely that she was "incapable of closing business for Unisys," Affidavit of Timothy Fiore (Oct. 25, 1990), Plaintiff's Statement, Exhibit C, para. 7; (2) in the presence of other employees, Rich accused plaintiff of spying in and "ransacking" his office and told her to stay away from his "secretary's work area and not to look over her shoulder," Deposition of Maura Donahue (Feb. 9, 1990), Plaintiff's Statement, Exhibit D ("Donahue Deposition"), at 95; and (3) in the presence of another employee, Rich accused plaintiff of hovering around secretaries' work areas and going through files, *id.* at 96.

These statements, when taken together, might reasonably be considered defamatory, and plaintiff is entitled to have a jury determine whether these statements injured her personal or professional reputation. Defendant's motion for summary judgment on Count Five is denied.

### 6. *Intentional Infliction of Emotional Distress (Count Six)*

Under Connecticut law, a plaintiff may prevail on a claim for emotional distress only if she shows that (1) defendants intended to inflict emotional distress or that it knew of should have known that emotional distress was likely; (2) the conduct was extreme and outrageous; (3) defendant's conduct was the cause of plaintiff's distress; and (4) the distress sustained by plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337, 1342 (1986). Plaintiff has alleged that Rich called her into his office "just minutes before [she] was to make a client presentation and, in the presence of two other individuals, accused [her] of spying in and ransacking his and Small's offices." Plaintiff's Memorandum at 32. In addition, Rich had a practice of shouting at her from his office, accusing

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530  
1991 WL 537530 (D.Conn.)  
**(Cite as: 1991 WL 537530 (D.Conn.))**

Page 6

her of disloyalty and threatening to fire her for inquiring about her raise. Donahue Deposition at 45.

*7 Plaintiff alleges that Small and Rich
> engaged in a concerted action to harass her psychologically during the latter part of her tenure at Unisys. This activity consisted of their promising to assign the plaintiff to new and existing preferred accounts and to giver her a raise in an attempt to induce her to stay at Unisys, only to renege on both of those promises.

Plaintiff's Memorandum at 34. In addition, she asserts that their decision to place her on a 60-day personal improvement plan is one of the acts that a reasonable jury might take into consideration in determining whether defendant's conduct was "extreme or outrageous." *Id.* at 34-35.

Plaintiff has misunderstood the applicable law on this question, because it is the rule in this district that "in the employment context, whether defendant ['s] conduct was extreme or outrageous under the facts of the instant case ... requires determination by the court in the first instance." *Collins v. Gulf Oil Corp.*, 605 F.Supp. 1519, 1522 (D.Conn.1985) (Dorsey, J.); *see also Snyder v. J.M. Ney Co.*, Civil No. H-85-653 (JAC), slip op. at 8 (D.Conn. Mar. 25, 1987) (plaintiff's allegations that she received warnings and poor performance evaluations; that she was followed around and that her work was "checked in nitpicking detail"; that she was "hounded and harassed by her supervisor repeatedly"; and that she was advised to take early retirement "do not rise to the level of 'extreme and outrageous conduct' necessary to support a claim for intentional infliction of emotional distress."). In light of the Connecticut Supreme Court's adoption of the rule that there is liability for intentional infliction of emotional distress "for conduct exceeding *all bounds* usually tolerated by decent society," *Petyan*, 200 Conn. at 254 n. 5, 510 A.2d at 1342 n. 5 (emphasis in original), I find that the plaintiff's allegations do not rise to a level at which a reasonable jury could find that defendant's conduct was extreme and outrageous. For this reason, defendant's motion for summary judgment on Count Six is granted.

*7. Implied Covenant of Good Faith and Fair Dealing (Count Seven) and Wrongful*

*Discharge (Count Eight)*
*a. Wrongful Discharge*

In Connecticut, the cause of action for the tort of wrongful discharge in violation of public policy was first recognized in *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980). Subsequent decisions by federal courts in this district have interpreted *Sheets* to mean that the cause of action exists only for those employees who are otherwise without a remedy. *See, e.g., Snyder,* slip op. at 7 (*Sheets* "created a non-statutory cause of action for an employee dismissed in violation of a statutory policy which itself did not provide a remedy"); *Leone v. Burns Int'l Sec. Servs., Inc.*, Civil No. B-84-19 (PCD), 11 Conn.L.Trib. No. 29, at 10, 11 (D.Conn. Jan. 2, 1985) (statutory remedy under Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, precludes assertion of claim for wrongful discharge in violation of Connecticut statute prohibiting discriminatory employment practices, Conn.Gen.Stat. § 46a-60); *Reed v. Product Identification Corp.*, Civil No. H-84-9 (TEC), 10 Conn.L.Trib. No. 35, at 7, 8 (D.Conn. Apr. 26, 1984) (concluding that Connecticut statute against age discrimination included public policy that administrative remedy was preferable to private cause of action).

*8 Plaintiff asserts that "[i]n the wrongful discharge count, [she] is not asserting a claim under the wage statute." Plaintiff's Memorandum at 37. But this is precisely the problem. Plaintiff relies on Conn.Gen.Stat.Ann. § 31-71a to 71i for the articulation of the Connecticut public policy against the withholding of wages, but she has a statutory remedy under that statute, *see* Conn.Gen.Stat.Ann. § 31-72 (1987). The fact that she is not pursuing *that* remedy and, instead, seeks a remedy under a theory of wrongful discharge, is precisely the kind of cause of action that the courts in the district have prohibited. Because she already has a remedy, defendant's motion for summary judgment on Count Eight must be granted.

*b. Implied Covenant of Good Faith and Fair Dealing*

Under Connecticut law, every at-will employment contract contains an implied covenant of good faith and fair dealing which makes the contractual right

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530
1991 WL 537530 (D.Conn.)
(Cite as: 1991 WL 537530 (D.Conn.))

Page 7

to discharge an employee "unenforceable when violative of public policy." *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 572, 479 A.2d 781, 789 (1984). This does not mean, however, that a showing of good cause is necessary before an at-will employment contract may be terminated, *id.* at 571, 479 A.2d at 788. The essence of the good faith and fair dealing principle "is the fulfillment of the reasonable expectations of the parties," and an employee may challenge his discharge only when the reason for the discharge is improper, "derived from some important violation of public policy." *Id.* at 572, 479 A.2d at 789.

Plaintiff asserts that defendant's termination of plaintiff was improper in that it violated the important public policy that employers not withhold wages. At least one lower Connecticut court has explicitly recognized that the Connecticut wage statutes [FN2] "represent a public policy against the withholding of wages by employers." *Cook v. Alexander & Alexander, Inc.*, 40 Conn.Supp. 246, 248, 488 A.2d 1295, 1296 (Judicial Dist. of New Haven 1985); *see also id.* at 249, 488 A.2d at 1297 ("The Connecticut Supreme Court has thus expressed a willingness to allow an action for the breach of good faith and fair dealing when the challenged discharge is allegedly related to the withholding of wages.").

When interpreting state law, federal courts are not bound by decisions of state courts other than the highest court of the state. *Commissioner v. Bosch*, 387 U.S. 456, 465 (1967); *Calvin Klein Ltd v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir.1989). The Connecticut Supreme Court has held that "[w]hether a claim resulting from ... a discharge is framed in tort or in contract should make no difference with respect to the issue of liability." *Magnan*, 193 Conn. at 572, 479 A.2d at 789 (relying on *Sheets*--a wrongful discharge case--for principles to be applied in context of implied covenant of good faith and fair dealing).
For the reasons discussed above in connection with the wrongful discharge claim, plaintiff's claim under an implied covenant of good faith and fair dealing must fail because she already has a remedy under the wage statute. Because the Connecticut Supreme Court has held that liability under a claim for breach of contract (implied covenant) ought to be treated no differently than a claim in tort (wrongful discharge), defendant's motion for summary judgment with respect to Count Seven is granted.

B. *Motion to Amend the Complaint*

**\*9** In her Motion to Amend Complaint (filed Nov. 9, 1990), plaintiff seeks to add a Count Nine in which she alleges that defendant negligently misrepresented to the plaintiff that she would be assigned preferred accounts as they became available; that her sales quota would be reduced; and that she would receive a 7% pay raise effective in September 1988.

Leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), and "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff argues that granting leave to amend the Complaint will not cause undue prejudice to the defendant and that "plaintiff's proposed amendment will require no additional discovery by either party." Memorandum in Support of Motion to Amend Complaint (filed Nov. 9, 1990) at 1, 4.

Defendant vigorously disputes plaintiff's characterization of the burden that would be imposed were the motion granted. "Should plaintiff be permitted to amend her complaint, the entire litigation schedule would be set back. Defendant would seek to conduct additional discovery and then file a summary judgment motion as to the new claim." Defendant's Opposition to Plaintiff's Motion to Amend the Complaint (filed Nov. 20, 1990) at 9. In particular, defendant argues that adding a count of negligent misrepresentation raises, for the first time, the issue of whether defendant exercised reasonable care. "Defendant would be prejudiced by the proposed amendment at this late date in that defendant would need to conduct additional discovery as to the legal and factual basis of plaintiff's new assertions that defendant acted negligently at the time it allegedly made representations to plaintiff." *Id.* at 8.

Although I am mindful of the inconvenience that adding this new count may cause to the defendant, the burden does not amount to "undue **prejudice**" within the meaning of *Foman*, 371 U.S. at 182. In

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 537530
1991 WL 537530 (D.Conn.)
**(Cite as: 1991 WL 537530 (D.Conn.))**

Page 8

light of the "liberalizing spirit of the Federal Rules," *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1254 (2d Cir.1989) (discretion on leave to **amend** ought to be exercised in manner "to secure the just, speedy, and inexpensive determination of every action"), plaintiff's motion to **amend** complaint is granted. However, because plaintiff has offered no explanation of why this count either was not or could not have been included in the original **amended** complaint filed on January 26, 1990, defendant's request to depose plaintiff, limited to the issue of negligent misrepresentation, is hereby granted. All costs associated with this additional deposition--including defendant's attorneys' fees--shall be the responsibility of the plaintiff.

### III. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment (filed Oct. 10, 1990) is GRANTED in part and DENIED in part. Summary judgment is granted as to Counts One, Three, Six, Seven, and Eight; it is denied as to Counts Two, Four, and Five.

*10 Plaintiff's Motion to Amend Complaint (filed Nov. 9, 1990) is GRANTED, but all costs associated with the taking of plaintiff's deposition on the question of negligent misrepresentation--including defendant's attorneys' fees--shall be borne by the plaintiff.

It is so ORDERED.

> FN1. "Whenever an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day next succeeding the date of such discharge." Conn.Gen.Stat. § 31-71c(b) (West 1987). "Wages" are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn.Gen.Stat. § 31-71a(3) (West Supp.1990). Finally, "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, ... such employee ... may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court...." Conn.Gen.Stat. § 31-72 (West Supp.1990).

FN2. *See supra* note 1.

1991 WL 537530 (D.Conn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=A005580...   11/09/2004